IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMILY SMITH, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

LUX RETAIL NORTH AMERICA, INC., and DOES 1 through 50 inclusive,

    Defendants.

No. C 13-01579 WHA

**ORDER REMANDING ACTION FOR WANT OF JURISDICTION**

## INTRODUCTION

Under the Class Action Fairness Act, defendant removed to federal court and plaintiff moves to remand. Inasmuch as the amount plausibly in controversy is less than five million dollars, remand is **GRANTED**.

## STATEMENT

Plaintiff Emily Smith was employed as a sales associate by Luxottica North America, Inc. from May 30, 2012, until at least the commencement of this civil action. In addition to a base salary, she has earned commission pay. During her employment, Luxottica allegedly paid overtime but has neglected to include commissions in the base for calculation of overtime (First Amd. Compl. ¶ 9).

Plaintiff commenced this putative class action in February 2013 in state court, alleging that Luxottica failed to pay overtime wages, failed to provide itemized wage statements, failed to

timely pay all wages due, and engaged in unfair business practices, all in violation of California law (First Amd. Compl. ¶¶ 15–19).

Luxottica removed the action to federal court, claiming removal jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d). Luxottica asserts (Dkt. No. 1 at 2):

> The Court has original jurisdiction under section 1332(d)(2), and the action is removable pursuant to the provisions of 28 U.S.C. sections 1441(a) and 1453 as it is a class action in which at least one class member is a citizen of a state different from that of Luxottica, the class size exceeds 100 members, and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

Plaintiff contests federal jurisdiction, stating that "the total amount recoverable in this lawsuit does not exceed $5,000,000.00" (First Amd. Compl. ¶ 27). An order requested supplemental submissions on the issue of removal jurisdiction and specifically requested Luxottica to show that CAFA's jurisdictional amount was met in this action (Dkt. No. 22). Both parties filed submissions. Plaintiff requests this action be remanded back to state court (Supp. Reply Br. 10).

**ANALYSIS**

"Removal statutes are strictly construed against removal." *Luther v. Countrywide Homes Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," such that courts must resolve all doubts as to removability in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Assuming timely removal, district courts have removal jurisdiction under CAFA in any class action where: (1) the amount in controversy exceeds $5,000,000, (2) the aggregate number of proposed class members is 100 or greater, and (3) there is minimal diversity between the parties. 28 U.S.C. 1332(d)(2). The burden of establishing CAFA removal jurisdiction lies with the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

The second and third requirements are satisfied in this action. Plaintiff herself contends that "the class is estimated to be greater than two hundred (200) individuals." (First Amd. Compl. ¶ 31). Moreover, it is undisputed in the record that plaintiff is a citizen of California while Luxottica is a citizen of Ohio. Minimal diversity therefore exists between the parties.

2

The first requirement — the amount in controversy — is the sticking point. As stated in the pleading, "the total amount recoverable in this lawsuit does not exceed $5,000,000.00." "[W]here the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007). Although this order cannot just take plaintiff's word for the amount in controversy, this Court's own evaluation finds it highly implausible that the amount in controversy could exceed five million dollars.

Contrary to Luxottica's assertion, *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (U.S. 2013), is of no help. The Supreme Court there held that where a district court finds the amount in controversy would exceed five million dollars but for the stipulation of plaintiff to the contrary, the stipulation alone does not bar removal jurisdiction under CAFA. In the present action the opposite is true. While this order cannot simply indulge plaintiff's stipulation, Luxottica has utterly failed to come close to establishing a plausible way this case could ever reach five million dollars in relief. Luxottica's extravagant calculations collapse under their own weight.

This order will now walk through the calculations submitted by Luxottica and demonstrate where they fail. According to Luxottica, the amount in controversy exceeds twenty million dollars based on the following math:

| | |
|---|---:|
| Deficit in overtime compensation | $ 161,544 |
| Penalty for failure to compensate overtime at the appropriate rate (§§510, 558 Cal. Lab. Code) | 1,870,050 |
| Penalty for denying employees minimum wage and overtime (§1194 Cal. Lab. Code) | 3,740,100 |
| Penalty for failure to obey the wage order (§1198 Cal. Lab. Code) | 3,740,100 |
| Penalty for failure to provide timely and accurate wage statements (§226(e) Cal. Lab. Code) | 1,870,050 |
| Penalty for failure to provide timely and accurate wage statements (§226.3 Cal. Lab. Code) | 9,350,250 |
| **TOTAL** | **$ 20,732,094** |

3

1   It is necessary to go through these components and check the underlying assumptions.

2   During the four years open under the statute of limitations, 7247 employees worked
overtime and earned commissions, says Luxottica. During the same time period, employees *on
average* worked .6 hours (36 minutes) of overtime per week. If commissions had been included
in the base pay, then the shortfall in overtime pay was $161,544 in total (for all 7247 employees
over all four years). This much will be accepted as accurate for purposes of this order, although
we will come back to the "on average" feature further below.

   The problem starts with the statutory penalties. As the above table shows, the statutory
penalties are the big ticket items. The limitations period for statutory penalties is one year.
The overtime deficit for the one year is not provided by Luxottica, but it obviously would be a
subpart of the four-year overtime deficit of $161,544. During the one-year limitation period
for penalties, Luxottica states that 3853 individuals worked overtime and earned commissions.
During the one year there were 37,401 pay periods. This much will also be accepted as accurate
for purposes of this order.

   Here is the first main problem: Luxottica assumes that all 3853 employees worked
overtime in every possible pay period. This assumption has no support in the record and is
extravagant. Common experience tells us that actual overtime is not spread evenly over all
employees and all pay periods but is clumped, that is, concentrated in busy seasons, busier stores
and for busier employees. Plaintiff herself alleges that she worked overtime only "frequently"
which translates to "less than always" (First Amd. Compl. ¶ 8). Luxottica's own math shows
only 36 minutes of overtime per employee per week on average, a very low number, highly
suggestive that some employees worked no overtime in some periods. It was unreasonable
for Luxottica to assume every employee invariably worked overtime in every pay period.
While averages are useful for some purposes, the use of averages does not validate the
assumption that every employee invariably worked overtime in every pay period. A good
swimmer, it is said, can drown in a river that is only six inches deep "on average."

   To put it differently, over an entire *four*-year period, only $161,544 would be due in
overtime, yet for a *single* year, the statutory penalties would, says Luxottica, exceed twenty

4

million dollars. This is so greatly disproportionate that the underlying assumptions must be questioned. One of those assumptions is the one just mentioned — that every single employee worked some overtime in every single pay period. It defies common experience.

During oral argument, Luxottica stated that for purposes of the penalties, no averages were used but the actual number of pay periods in which the 3853 employees worked overtime. Luxottica referred to a declaration by its Director of Human Resources Operations (Schwab Decl. ¶ 12):

> [O]f the 10,445 Putative Class Members, 3,853 individuals worked overtime and earned commission pay as part of their compensation between March 4, 2012, and March 4, 2013. At my direction, Microsoft Excel was used to determine that these 3,853 individuals worked a combined total of 37,401 pay periods between March 4, 2012 and March 4, 2013.

This states that the 3853 individuals worked a combined total of 37,401 pay periods, *not* that they worked overtime in these pay periods. Luxottica requested leave to file additional support for its proposition that the individuals worked overtime in all of these pay periods. Leave to file additional materials will be **DENIED**. As stated above, a previous order specifically requested Luxottica to make the required showing and it failed to do so. That ends the matter.

Another necessary but equally flawed assumption undergirding the Luxottica calculation is the stacking of penalties. For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted *five* (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate (§§ 510, 558). Another is for denying employees minimum wage and overtime (§ 1194). But is it plausible that we would really pile one penalty on another for a single substantive wrong? It is true that one district judge has assumed in dicta that "stacking" would be appropriate. *Hernandez v. Towne Park, Ltd.*, No. 12-02972 MMM, 2012 WL 2373372, at *17 n.77 (C.D. Cal. Jun. 22, 2012). But no actual holding in any judicial decision has ever blessed such stacking.

What is more, far and away the largest penalty in the Luxottica calculation is pursuant to Section 226.3, which punishes an employer for each violation of Section 226(a) "for which the employer fails to provide the employee a wage deduction statement or fails to keep the records

5

1 required" by Section 226(a). But here the employer *did* provide a wage deduction statement
2 detailing the debits and credits leading to the final paycheck number. Indeed, one is appended
3 to the pleading (First Amd. Compl. Exh. A). The essence of the complaint is rather that the
4 compensation base for the overtime calculation should have included the commissions, *not* that
5 there was a failure to provide a wage deduction statement along with the paycheck. As for the
6 records required to be kept by Section 226(a), there is no such plausible claim in the pleading
7 that the required records were not kept. The records *were* maintained for all the pleadings show.
8 The only issue, to repeat, is whether the commissions should have been included in the base
9 for overtime. Nothing in Section 226.3 or Section 226(a) provides that the requirements for a
10 wage-deduction statement or for maintaining records are violated merely because the statements
11 and records, although otherwise provided and maintained, included an error in calculating a line
12 item. Yes, the complaint includes these sections in a laundry list of labor code provisions
13 violated, but that is only a conclusion; no plausible claim lies on the face of the complaint under
14 them. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). So this massive line item in the Luxottica
15 calculation must be ignored.

In short, in evaluating Luxottica's math, these points are clear: (i) the penalties, not the actual overtime due, drive the large numbers, (ii) impermissible stacking of penalties is essential to Luxottica's math to exceed five million, (iii) at least one of the penalty sections — Section 226.3 — has no plausible application here, and (iv) apart from the above Luxottica assumes that all of the work force worked overtime in all pay periods.

Therefore, Luxottica's calculations are little more than wild speculation piling assumption upon assumption. Accordingly, this order finds that Luxottica has not shown with reasonable estimates that the amount in controversy in this action is five million dollars or more.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand is **GRANTED**. The Clerk shall **REMAND** this action to the Superior Court of California, County of San Mateo. If and when

plaintiffs explicitly seek class damages and penalties in excess of five million dollars, Luxottica may remove the action back to federal court.

**IT IS SO ORDERED.**

Dated: June 13, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE